FILED

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF VIRGINIA

|  |  |
|---|---|
| **GLOBAL BUSINESS TRAVEL ASSOCIATION, INC.** )<br>)<br>)<br>) | 2014 MAY -8 P 2: 27<br><br>CLERK US DISTRICT COURT<br>ALEXANDRIA, VIRGINIA |
| Plaintiff, ) |  |
| ) | |
| v. ) | Case No. 1:14cv510 -Jcc/TRJ |
| ) | |
| **JANE DOE,** ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff, the Global Business Travel Association, Inc., ("GBTA" or "the Association"), by and through undersigned counsel, hereby moves for an entry of judgment in its favor against Defendant, Jane Doe, also known as "jenniferlacy762@yahoo.com," on the grounds set forth below:

## THE PARTIES

1.      GBTA is the premier trade association in the $370 billion per year business travel industry.  For the past twenty-five years, GBTA has provided education, professional development, networking events, news, and advocacy for the tens of thousands of industry professionals who buy and sell travel-related services in the United States and abroad.  These services are administered by GBTA, through its headquarters in Alexandria, Virginia.

2.      GBTA generates income in several ways.  It sells memberships to interested stakeholders in the travel industry.  GBTA also receives sponsorship revenue related to its yearly convention, the largest and most prominent in the industry.  GBTA has other revenue-generating ventures as well.  For instance, among other examples, it publishes a magazine uniquely

1

dedicated to topics of interest in the travel industry. The common denominator for each of these GBTA revenue streams is the trust that industry professionals place in GBTA and its personnel to represent the interests of its constituency.

3.      The Defendant, Jane Doe, is the user of e-mail address "jenniferlacy762@yahoo.com". On or about December 2, 2013, Jane Doe (*i.e.*, jenniferlacy762) sent an e-mail to GBTA executives, employees, *members and sponsors* alike, which constituted an overt attack on GBTA and various GBTA employees ("December 2 e-mail"). The contents of the December 2 e-mail were false. They were unsubstantiated. And, they were allegations of fraud and other wrongdoing that constitute defamation *per se* under the laws of the Commonwealth of Virginia.

4.      GBTA brings this lawsuit to seek injunctive and monetary relief from the Court to prevent the user of "jenniferlacy762" from further damaging the business reputation of GBTA and the individual professional reputations of GBTA directors and employees.

## JURISDICTION AND VENUE

5.      Jurisdiction is proper pursuant to 28 U.S.C. § 1331 because this matter raises a federal question.

6.      Venue is proper pursuant to 28 U.S.C. § 1391.

7.      This Court has personal jurisdiction over GBTA because it is headquartered in Alexandria, Virginia. Personal jurisdiction over Defendant is proper because (s)he caused GBTA tortious injury in Virginia through his/her transmission of tortious information to parties residing and doing business in the Commonwealth.

## PERTINENT FACTS

8.      GBTA has been in existence for approximately twenty-five years. For most of that time, the "Global" Business Travel Association was known as the "National" Business Travel

48059121.4

Association. However, over approximately the past five years, GBTA has experienced exponential growth. This growth is the result of multiple forces aligning. For instance, a few years ago, GBTA's professional and lay leadership became keenly focused on growing the organization domestically to accommodate the evolving demands of GBTA's constituency within the United States. Separately, GBTA also recognized a previously unfulfilled market for servicing its business travel constituency abroad. These realizations led GBTA to its first ever international expansion. Today, GBTA operates in the United States, South America, the Pacific Rim, and Europe.

9.     Adapting to its global presence, in 2011, the "National" Business Travel Association appropriately changed its name to reflect the "global" character of its operations and constituency.

10.     When organizations change, lay leaders and/or members may become uncomfortable with that change. As a trade association, critical (or even divisive) e-mails from members are to be expected. Honest and respectful discourse is healthy. But, criticism that contains false statements that subject the target(s) to scorn and ridicule is unlawful.

11.     On December 2, 2013 an anonymous e-mailer published unsubstantiated allegations of wrongdoing about GBTA, its directors, and its employees. Among other things, the December 2 e-mail:

     a.     Attacked the personal lives of GBTA employees;

     b.     Accused GBTA of financial impropriety;

     c.     Alleged that GBTA directors and employees were engaged in self-dealing and other improper contracts to the detriment of GBTA;

     d.     Asserted that various GBTA employees committed conduct that, if true, would constitute commercial fraud; and

3

e.   Accused GBTA and its Board members of misuse of its tax-exempt
     organizational structure.

12.   Upon information and belief, Defendant published this email from one or more

"protected computer(s)," as that term is defined in 18 U.S.C. § 1030(e)(2), insofar as the

computer(s) used by the Defendant "[were] used in or affecting interstate or foreign commerce or

communication."

13.   The GBTA Board of Directors took these allegations very seriously even though it

would have been reasonable to ignore these allegations and choose not to investigate them due to

the lack of credibility.

14.   Immediately after receiving the e-mail in question, the Board convened a Special

Committee, led by the Chair of GBTA's Board of Directors, to investigate the concerns raised in

the December 2 e-mail.  Under the advice and direction of counsel and a management consultant,

GBTA conducted a thorough review of the facts and, relatedly, GBTA's processes and

procedures.

15.   This process culminated with a report to the Board of Directors in February 2014.

Critically, as a result of this process, the investigation by GBTA's Board unambiguously

dispelled the accusations contained in the December 2 e-mail as being completely without merit.

16.   Rather, the allegations in the December 2 e-mail falsely subjected GBTA, its directors

and employees, to scorn and ridicule.  These statements were published to GBTA directors and

employees.  These statements were also published to GBTA members and sponsors and its

prospective members and sponsors.

17.   The accusations in the December 2 e-mail were based on conjecture and speculation.

"jenniferlacy762" failed to provide or reference any evidence substantiating his/her allegations

of fiscal mismanagement, excessive compensation, violations of federal tax law, and personal

4

enrichment by GBTA executives. Critically, Defendant Doe stated these false allegations to be facts, not the (baseless) opinion or the (meritless) conjecture that they were.

18.     GBTA does not currently know the identity of the user behind "jenniferlacy762." Regardless, as a self-proclaimed GBTA member, Defendant (*i.e.*, the user of "jenniferlacy762@yahoo.com") knew or reasonably should have known that the false allegations in the December 2 e-mail would sully the reputation of GBTA, its directors and employees, and would negatively impact GBTA's membership and corporate sponsorships.

19.     GBTA has a reasonable basis to anticipate future harmful acts by the person behind "jenniferlacy762." Defendant stated in the December 2 e-mail that (s)he had been in contact with reporter Mike DeBonis of the Washington Post. (S)he also claimed to possess a list of the e-mail addresses of every GBTA member and attendee of the upcoming GBTA Convention. Defendant has expressly threatened to forward incendiary and unsubstantiated statements about GBTA to these individuals as well. These threats pose a real and present danger that "jenniferlacy762" has not completed his/her attempt to defame GBTA, its Board members and its employees.

## CAUSES OF ACTION

### COUNT ONE
### (Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g))

20.     The allegations contained in Paragraphs 1 through 19 are incorporated into this Count One as if they were fully stated herein.

21.     On or about December 2, 2013, Defendant forwarded an email publishing unsubstantiated allegations of wrongdoing about GBTA, its directors, and its employees.

22.     Upon information and belief, Defendant published this email from one or more "protected computer(s)," as that term is defined in 18 U.S.C. § 1030(e)(2), insofar as the

computer(s) used by the Defendant "[were] used in or affecting interstate or foreign commerce or communication."

23.     Upon information and belief, Defendant accessed these protected computer(s) without authorization to do so and/or exceeded any authorized access provided.

24.     Upon information and belief, Defendant accessed these protected computer(s) knowingly and with the intent to defraud GBTA, its members and its sponsors.

25.     Upon information and belief, Defendant's conduct was in furtherance of Defendant's efforts to commit fraud.

26.     Upon information and belief, Defendant accessed one or more protected computers without authorization.  As a result of such conduct, Defendant caused damage and loss to GBTA.

27.     Defendant's actions violated 18 U.S.C. § 1030.

28.     As a result of this conduct, GBTA has suffered and will continue to suffer damages in the form of lost revenue and damage to its reputation, among other damages.

## COUNT TWO
### (Defamation *Per Quod*)

29.     The allegations contained in Paragraphs 1 through 28 are incorporated into this Count Two as if they were fully stated herein.

30.     Defendant distributed the December 2 e-mail to more than fifty individuals, many of whom were members or corporate sponsors of GBTA.

31.     The December 2 e-mail contained false allegations of fraud and other wrongdoing, which constitutes defamation under the laws of the Commonwealth of Virginia.  These allegations related to alleged fiscal mismanagement, personal enrichment, federal tax-law violations, and a general lack of integrity by GBTA executives.

32.     These statements subjected GBTA, its directors and employees, to scorn and ridicule.

6

33.     The statements made in the December 2 e-mail were not mere expressions of opinion.

34.     These statements were negligently made and were false and defamatory in nature.

35.     As a result of these false statements, the reputations of GBTA and its executives were damaged.

36.     As a result of these false statements, GBTA has suffered and will continue to suffer damages in the form of lost revenue and damage to its reputation, among other damages.

### COUNT THREE
### (Defamation *Per Se*)

37.     The allegations contained in Paragraphs 1 through 36 are incorporated into this Count Three as if they were fully stated herein.

38.     Defendant distributed the December 2 e-mail more than fifty individuals, many of whom were members of or corporate sponsors of GBTA.

39.     The December 2 e-mail contained false allegations of fraud and other wrongdoing, which constitute defamation *per se* under the laws of the Commonwealth of Virginia. These allegations related to alleged fiscal mismanagement, personal enrichment, federal tax-law violations, and a general lack of integrity by GBTA executives.

40.     The statements made in the December 2 e-mail indicated that Plaintiff had committed fraud and other criminal actions involving moral turpitude that, if true, might result in Plaintiff being indicted and punished.

41.     The statements also accused Plaintiff of being unfit and lacking the requisite integrity to meet its mission statement and to provide service to GBTA's membership.

42.     The statements also hurt Plaintiff and Plaintiff's reputation in the business travel industry.

43.     The statements were untrue. They were not mere expressions of opinion.

7

44.     The statements were negligently made. They were false and defamatory in nature.

45.     The statements in the December 2 e-mail constitute defamation *per se* because they were so egregious that reputational harm can be assumed.

46.     As a result of these false statements, the reputations of GBTA, its directors and employees, were, in fact, damaged.

47.     As a result of these false statements, GBTA has suffered and will continue to suffer damages in the form of lost revenue and damage to its reputation, among other damages.

## COUNT FOUR
### (Tortious Inference with Contractual Relations)

48.     The allegations contained in Paragraphs 1 through 47 are incorporated into this Count Four as if they were fully stated herein.

49.     GBTA has existing and valid contractual relationships with various corporate sponsors, partners, vendors, and members.

50.     Upon information and belief, Defendant knew about these contractual relationships when (s)he published the December 2 e-mail.

51.     Upon information and belief, Defendant also knew that the contents of the December 2 e-mail could impact GBTA's contractual relationships.

52.     Upon information and belief, Defendant intended to interfere with GBTA's contractual relationships by inducing or causing breach or termination of GBTA's existing contractual relationships.

53.     In fact, the December 2 e-mail has led to the improper breach of contracts with GBTA.

54.     As a result of Defendant's conduct, GBTA has suffered and will continue to suffer monetary harm in an amount to be proven at trial.

8

## COUNT FIVE
### (Tortious Inference with Prospective Business)

55.     The allegations contained in Paragraphs 1 through 54 are incorporated into this Count Five as if they were fully stated herein.

56.     GBTA has existing and non-speculative business relationships with third-party companies and individuals. From these existing business relationships, GBTA had a reasonable expectation of prospective business from these third-party companies and individuals.

57.     Upon information and belief, Defendant had knowledge that GBTA expected prospective business dealings with such third parties.

58.     GBTA is reasonably certain that, absent Defendant's intentional misconduct, GBTA would have realized its business expectancy with these third parties.

59.     Defendant's intentional misconduct was an improper means of interfering with GBTA's anticipated economic advantage.

60.     As a direct and proximate cause of Defendant's misconduct those third-party business expectancies did not materialize.

61.     GBTA suffered monetary damages in an amount to be proven at trial as a result of Defendant's misconduct.

9

WHEREFORE, Plaintiff, through counsel, requests a judgment against Defendant for:

A.  Injunctive relief to prevent the Defendant from further disparaging GBTA's name and/or reputation, or the names and/or reputations of GBTA's Board members and employees;

B.  Appropriate compensatory damages in an amount to be determined at trial but not less than $500,000.00; and,

C.  For any other relief that the Court deems to be just and proper under the circumstances.

**PLAINTIFF REQUESTS A TRIAL BY JURY.**

Respectfully Submitted,

**POLSINELLI PC**

STEVEN J. WEBER

Steven J. Weber (Virginia Bar No. 35573)
Noam B. Fischman (*pro hac vice* forthcoming)
1401 Eye Street N.W., Suite 800
Washington, D.C. 20005
Phone: (202) 626-8390
Fax: (202) 783-3535
nfischman@polsinelli.com
sweber@polsinelli.com

*Counsel for the Plaintiff,*
*Global Business Travel Association, Inc.*

48059121.4